COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia


DUSTIN AUBREY GRAM

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0728-19-4                        JUDGE CLIFFORD L. ATHEY, JR.
                                                    MARCH 3, 2020

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Donald M. Haddock, Judge Designate

Meredith M. Ralls (S&R Law Firm, PLLC, on brief), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Dustin A. Gram ("Dustin") was convicted of two counts of unlawful wounding, in

violation of Code § 18.2-51, and sentenced to ten years' imprisonment with eight years

suspended. On appeal, Dustin assigns error to the trial court's ruling that there was sufficient

evidence to convict him of unlawful wounding where no witness testified as to how their injuries

occurred and what instrumentality caused the injuries. Dustin also assigns error to the trial

court's ruling that he did not act in self-defense. For the following reasons, we disagree and

affirm the ruling of the trial court.

## I. BACKGROUND

In 2018, Dustin lived with his sister and two younger brothers in a house owned by their

mother, Suzanne Musselman ("mother"). On March 2, 2018, Dustin's younger brother, James

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Drew Gram ("Drew"),[1] texted their mother and asked her to come home and evict one of Dustin's friends, who had been staying at the home without her permission. Mother returned home and evicted Dustin's friend before going to work. Dustin was not present when his mother evicted his friend from the home.

Mother returned again to the home around 9:00 p.m. after receiving a text message from Drew informing her that the electricity was not working in the home. Upon her arrival, mother found her children, excluding Dustin, cleaning up a puddle of oil and pet food at the top of the stairs leading to the upper floor of the home.

Mother began messaging Dustin to determine if he knew what had happened at the house while she was at work. Mother told Dustin that the family had to break into Dustin's bedroom to access the breaker box and restore electricity to the home. In response, Dustin told his mother that he was "going to come back to the house and he was going to . . . break down every door in the house."

Around midnight, the family, excluding Dustin, were in the mother's upstairs bedroom when they heard a loud noise at the front door. The family members then heard the downstairs bathroom window shatter and Dustin yell, "I'm going to kill you. I'm going to kill you all." When the mother approached Dustin and asked what he was doing, Dustin angrily screamed, "I'm breaking in, this is how we do things around here."

Hearing this outburst, Drew and the youngest brother,[2] Tristin Musselman ("Tristin"), proceeded downstairs to ensure the safety of their mother. When Drew arrived downstairs,

---

[1] The Commonwealth referred to Drew as "James" or "Drew" during the trial. We refer to him as Drew in the opinion for clarity.

[2] At the time of the trial, Dustin was thirty-six years old, Drew was thirty-four years old, and Tristin was twenty-two years old.

Dustin stated, "I'm going to fuck you up." Their mother stepped between Drew and Dustin because she was concerned that Dustin would injure Drew.

A fight then ensued between all three brothers in a very narrow downstairs utility room located between the back door of the home and Dustin's downstairs bedroom. The altercation initially began between Dustin and Drew, but Tristin quickly joined the fight between his older brothers. The mother, while pinned between a fish tank and the wall, handed her cell phone to her daughter, who then called the police to report the incident. Subsequently, the mother also spoke with the 911 dispatcher to report the altercation.

At trial, the mother testified that on the night of the fight, Drew became frustrated with Dustin due to the internet router being missing from the home. Drew was also disturbed by the mess that the family had to clean up from the oil and pet food dumped at the top of the stairs. The mother also testified that Tristin was frustrated with Dustin, but not angry.

Drew testified that after Dustin broke the downstairs bathroom window, his eldest brother began a tirade of profanity directed at their mother. Drew was concerned that Dustin was going to hurt their mother, do something to the house, or harm other family members, so he went downstairs to ensure their safety. Drew acknowledged that Dustin had never physically attacked their mother, but that Dustin had previously gotten violent with Drew and Tristin on multiple occasions. Drew stated that Dustin had physically hit him more times than Drew could count and that it was not uncommon for Dustin to lose control. Drew also testified that Dustin looked right at Drew and stated he was going to "fuck [Drew] up." Drew could not remember if Dustin threw the first punch or if Dustin had just raised his hands in a threatening manner, but he could recall both brothers wrestling on the ground.

Tristin testified that Dustin started the fight with Drew and that he joined in the fray to assist Drew. Tristin admitted to punching Dustin at some point during the fight while Drew held

Dustin around the waist. Tristin also acknowledged hitting Dustin a couple of times in the face, but denied using a weapon in the fight. Later, Tristin confirmed that he meant that Dustin had initially started the physical conflict.

Both Drew and Tristin testified that Dustin was brandishing a knife during the fight and that they were worried that Dustin would stab them. During the altercation, Drew and Tristin attempted to disarm Dustin by holding Dustin's wrist. Drew then managed to open the exterior back door to the home before Drew and Tristin pushed Dustin out of the house through the open door. Drew and Tristin then braced themselves against the door until Dustin finally left the premises.

Drew suffered a deep gash on his hand near the base of his thumb, and Tristin received both a stab wound to his side and a cut to his ear, which were bleeding. Drew declined stitches because he did not have health insurance, and Tristin received seven stitches to his left side and eight stitches where his ear had been cut. Tristin could not recall the exact point during the fight when he was stabbed in the side or received the cut to his ear, but he testified that Dustin's knife was the only item present that could have caused his injuries. The Commonwealth then rested its case, and Dustin moved to strike the Commonwealth's evidence, which the trial court denied.

Dustin then testified on his behalf that he returned home around midnight and discovered that the back door near his bedroom was locked. Dustin stated that he knocked on the front door and waited roughly a minute before going to the back of the house and breaking the window. Dustin acknowledged that lights were on in the home and that there were multiple cars at the house. However, Dustin claimed that he did not think anyone was home and assumed that his family had left the house.

Dustin admitted that after he broke the bathroom window, he was shouting at his mother when she opened the home's back door to let him in. Dustin alleged that while he was arguing

- 4 -

with his mother, he was struck in the head with an object that felt solid; then Drew tried to tackle him like a football player, while Tristin was reaching over Drew and throwing punches at him. Dustin further alleged that Drew hit him with a ratchet wrench, which was about eighteen inches long, during the fight.  It was at this point, according to Dustin's testimony, that Dustin pulled his knife out of his pocket in an attempt to get Drew and Tristin to stop attacking him.

Dustin further testified that his brothers attempted to grab the knife but that he refused to let it go.  By the end of the fight, Dustin stated that Drew was actually holding the knife and that it was Dustin who then attempted to disarm Drew.  Dustin estimated that the fight lasted four or five minutes and that Drew and Tristin dragged him to the back door and threw him out.  Dustin further contended that after leaving the house, he realized he had been stabbed in his back, which required four staples to close.

On cross-examination, Dustin acknowledged that the knife the police found in his car was the same knife used in the altercation, and he eventually admitted that he had been previously convicted of three felonies.  Dustin further admitted that he had been a wrestler in school, was proud of his ability to wrestle, and that he usually won in previous altercations against Drew and Tristin.  Dustin also admitted that he frequently reminded Drew and Tristin that he was easily able to physically overcome them.

At the close of all the evidence, Dustin renewed his motion to strike, asserting that the Commonwealth had failed to demonstrate malicious intent on Dustin's part and urged the trial court to strike the malicious wounding charges.  The trial court denied Dustin's renewed motion to strike.

Following closing arguments, the trial court found "that the Commonwealth's witnesses are in fact credible as to each facet of their testimony and that [Dustin's] testimony is not credible."  The trial court rejected Dustin's claim that he was acting in self-defense but agreed

with Dustin that the Commonwealth had failed to prove malice beyond a reasonable doubt, thereby finding Dustin guilty of two counts of unlawful wounding. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

"In general, when reviewing a challenge to the sufficiency of the evidence to support a conviction, an appellate court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it." Marshall v. Commonwealth, 69 Va. App. 648, 652-53 (2019). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Flanagan v. Commonwealth, 58 Va. App. 681, 702 (2011) (quoting Marable v. Commonwealth, 27 Va. App. 505, 509-10 (1998)).

Here, the evidence adduced at trial shows that both Drew and Tristin received injuries consistent with the reckless wielding of a knife by Dustin. A wounding is unlawful, rather than malicious, if it results from "heat of passion," such as rage or fear, rather than malice. Miller v. Commonwealth, 5 Va. App. 22, 24-25 (1987).

It was uncontroverted that the brothers got into an altercation after Dustin's rage-filled tirade against their mother. Neither Tristin, nor Drew, testified to having a weapon of any kind during the altercation. Dustin admitted in his own testimony that he possessed a knife during the fight, which was later found in his car.

Dustin contends that because neither of the brothers could testify as to exactly how their injuries occurred, the Commonwealth's circumstantial evidence was insufficient to disprove every reasonable hypothesis of innocence. Dustin cites to Commonwealth v. Smith, 259 Va. 780, 782 (1987), for the proposition that "the chain of necessary circumstances" was broken, and thus the Commonwealth could not show that Dustin used a knife to cause the injuries. We disagree.

This Court addressed Smith in Logan v. Commonwealth, 67 Va. App. 747, 754-55 (2017). In Logan, the appellant was the only one who was seen with a gun just before shots were fired at the truck in which the victim was struck. Id. at 754. Logan argued that the Commonwealth could not prove who shot the victim and thus did not meet its burden. Id. We held that "nothing in the record indicates that any other individuals . . . had firearms, no one else had threatened [the victim], and no one else was observed to bear any ill will toward [the victim], the factfinder in this case could have concluded that appellant was the shooter." Id. at 755.

In this case, Drew received a deep cut to his hand, which the fact finder credibly found was caused by Dustin's knife due to the depth of the wound. Tristin also received an open stab wound in the side and a slice wound to his ear, which the trial court determined were caused by the knife used by Dustin in the altercation. The trial court found Dustin's self-serving version of events incredible. Since Dustin was the only individual holding a knife during the mutual combat between the brothers, based upon this circumstance, as well as other testimony related to the altercation, it was reasonable for the trial court to conclude that the wounds were caused by the knife wielded by Dustin in the altercation.

As a result, we find that there was sufficient evidence for the trial court to find that Dustin unlawfully wounded his brothers. Additionally, the Commonwealth is not required to conclusively show how Drew and Tristin received their wounds. Instead, the finder of fact may

infer from the circumstances of this case (i.e., that the wounds were of a type caused by a knife, and Dustin was the only combatant who used a knife during the fight) that Dustin unlawfully wounded his brothers. In any event, we are not permitted to substitute our own judgment for the factual conclusion drawn by the finder of fact if it is supported by the evidence. See Chavez, 69 Va. App. at 161. The ruling of the trial court was, therefore, not plainly wrong or without evidence to support the conviction.

## B. Self-Defense

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." Smith v. Commonwealth, 17 Va. App. 68, 71 (1993) (citations omitted). "Whether the evidence raises such a reasonable doubt is a question of fact that will not be disturbed on appeal unless plainly wrong or unsupported by the evidence." Utz v. Commonwealth, 28 Va. App. 411, 415 (1998) (citation omitted).

In Jordan v. Commonwealth, 219 Va. 852, 855 (1979), the Supreme Court ruled "that a person cannot rely upon a plea of self-defense in a case of homicide or assault when he himself was the aggressor and willfully brought on, without legal excuse, the necessity for the homicide or assault."

In this case, the trial court, as fact finder, found that the testimony of Drew and Tristin concerning the facts and circumstances related to the fight was credible. Tristin testified that Dustin was the initial aggressor in the fight and that he only joined in the fight to defend Drew, after witnessing Dustin's aggressive actions toward Drew. Both Drew and Tristin further testified that their older brother, Dustin, was brandishing a knife during the fight, which they attempted to remove from their brother's possession. Drew testified that he could not count the number of times Dustin had previously struck him, and Dustin admitted to being proud of his

- 8 -

wrestling prowess and his ability to subdue both of his brothers in previous battles. Conversely, the trial court found Dustin's testimony as to his participation in the fight being grounded in defending himself from his brothers as incredible, reasonably disbelieving Dustin's self-serving version of events.

The trial court reasonably determined that Dustin was the initial aggressor in the fight, having threatened to kill everyone in the home prior to the commencement of the altercation. Dustin wielded a knife throughout the altercation, which the trial court reasonably concluded resulted in the significant injuries suffered by both of his younger brothers. Given the totality of the evidence considered by the trial court, it was not plainly wrong for the trial court to find that Dustin did not act in self-defense.

### III. CONCLUSION

The trial court is therefore affirmed.

Affirmed.